IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CR. NO.: 6:21cr381 |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1957 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| vs. | ) | 18 U.S.C. § 982(a)(1) |
| | ) | 18 U.S.C. § 982(a)(2) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| **JEFFREY GOSSETT** | ) | **INFORMATION** |

THE UNITED STATES ATTORNEY CHARGES:

At times relevant to this Information:

1. Jeffrey Gossett ("Gossett") was a citizen of the United States and resident of South Carolina.

2. Simply Everything, LLC, was a limited liability company registered under the laws of the State of South Carolina. Defendant was the owner of Simply Everything, LLC.

3. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to

the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

5. One source of relief that the CARES Act provided for was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized up to $310 billion in additional PPP funding.

6. The PPP allows qualifying small businesses and other organizations to receive PPP loans. Businesses must use PPP loan proceeds on payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

7. The amount of a PPP loan that a small business may be entitled to receive is determined by the number of employees employed by the business and the business's average monthly payroll costs.

8. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

9. The SBA oversees the PPP. However, individual PPP loans are issued by private, approved lenders (most commonly, banks and credit unions) who receive and process PPP applications and supporting documentation, and then make loans using the lenders' own funds, which are 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, also allowed for the SBA to provide Economic Injury Disaster Loans (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. The SBA Office of Disaster Assistance (ODA) controls the EIDL program and maintains authority over all loans created and disbursed under the EIDL program. Pursuant to the provisions governing the EIDL program, loan proceeds must be used by the business to pay certain permissible expenses. The EIDL loans may be used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

**COUNT ONE**
(Wire Fraud – 18 U.S.C. § 1343)

THE SCHEME TO DEFRAUD

11. The allegations contained in paragraphs 1 through 10 of this Information are incorporated herein by reference.

12. That beginning in or about March 2020, and continuing until in or about August 2020, in the District of South Carolina and elsewhere, the Defendant, JEFFREY GOSSETT, knowingly devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and during such period, knowingly transmitted and caused to be transmitted in interstate commerce, by means of wire

communications, certain electronic signals, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

13. It was part of the scheme that JEFFREY GOSSETT, electronically submitted a PPP loan application to Celtic Bank, a lender approved by the SBA to issue PPP loans. In the loan application, JEFFREY GOSSETT requested a PPP loan in the amount of $277,532.00 for Simply Everything, LLC.

14. In the loan application, JEFFREY GOSSETT included fraudulent and false representations and submissions.

15. On or about May 13, 2020, based on JEFFREY GOSSETT'S fraudulent and false representations and submissions, Celtic Bank distributed approximately $277,532.00 of PPP loan funds to Simply Everything, LLC.

16. During the course of the scheme and artifice to defraud, using interstate wires and otherwise, JEFFREY GOSSETT fraudulently obtained $1,870,549.00 of PPP and EIDL assistance in his name, for various businesses owned by JEFFREY GOSSETT or in which JEFFREY GOSSETT represented he had an ownership interest, on behalf of other individuals, and on behalf of entities owned by other individuals.

17. On or about May 12, 2020, in the District of South Carolina, for the purpose of executing the aforesaid scheme caused to be transmitted by means of wire communication in interstate commerce the signals, signs, and sounds described when he used the internet to electronically submit a PPP loan application to Celtic Bank, in the amount of $277,532.00 for Simply Everything, LLC.

All in violation of Title 18, United States Code, Section 1343.

**COUNT TWO**
(Money Laundering – 18 U.S.C. § 1957)

18. The allegations contained in paragraphs 1 through 10 of this Information are incorporated herein by reference.

19. From in or about May 2020 through in or about August 2020, the Defendant, JEFFREY GOSSETT, did knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, that is wire fraud.

In violation of Title 18, United States Code, Section 1957.

## FORFEITURE

WIRE FRAUD:

Upon conviction for violation of Title 18, United States Code, Section 1343 as charged in this Information, the Defendant, JEFFREY GOSSETT, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offense.

MONEY LAUNDERING:

Upon conviction for violation of Title 18, United States Code, Section 1957 as charged in this Information, the Defendant, JEFFREY GOSSETT, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offense and any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957.

PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 982(a)(2), and 28 U.S.C. § 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

A. Cash Proceeds/Forfeiture Judgment:

A sum of money equal to all property the Defendant obtained as a result of the wire fraud offense charged in this Information, and all interest and proceeds traceable thereto as a result for his violation of 18 U.S.C. § 1343.

B. Money Laundering /Forfeiture Judgment:

A sum of money equal to all property involved in the money laundering offense charged in this Information, and all interest and proceeds traceable thereto as a result for his violation of 18 U.S.C. § 1957.

C. Bank Accounts:

(1) $363,569.11 in funds seized from TD Bank Account x8641
In the name of: C. Tim Keagy LLC
Asset ID: 21-FBI-000386

(2) $103,279.84 in funds seized from First Citizens Bank Account x6801
In the name of: Simply Everything Inc.
Asset ID: 21-FBI-000328

(3) $118,902.61 in funds from First Citizens Bank Account x4909
In the name of: Adriel Gossett
Asset ID: 21-FBI-000327

(4) $10,473.45 in funds from First Citizens Bank Account x4101
In the name of: Select Dining LLC
Asset ID: 21-FBI-000326

(5) $58,350.54 in funds from First Citizens Bank Account x8199
In the names of: Jeffrey Gossett and Elizabeth Gossett
Asset ID: 21-FBI-000325

(6) $83,894.35 in funds from Bank of Travelers Rest Account x7905
In the name of: Select Dining LLC dba Epicurean
Asset ID: 21-FBI-000315

(7) $19,592.33 in funds seized from Wells Fargo Account x8449
In the name of: Keystone Investment Properties - Operating Account
Asset ID: 21-FBI-000314

(8) $363,057.68 in funds seized from South State Bank Account x1504
In the name of: Select Dining
Asset ID: 21-FBI-000313

SUBSTITUTION OF ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third person;
(c) has been placed beyond the jurisdiction of the Court;
(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b)(1) to seek forfeiture of any other property of Defendant up to an amount equivalent to the value of the above-described forfeitable property;

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

M. Rhett DeHart

M. RHETT DEHART (WIM/kk)
ACTING UNITED STATES ATTORNEY