**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CR: 6:21-cr-00381** |
| **JEFFREY GOSSETT** | ) | |
| | ) | **DEFENDANT'S MOTION FOR VARIANCE FROM THE SENTENCING GUIDELINES** |
| | ) | |
| | ) | |
| | ) | |

The Defendant, Jeffrey Gossett ("Mr. Gossett" or "Defendant" or "Jeffrey Gossett"), by and through his undersigned counsel, E. Bart Daniel, respectfully submits this motion for variance from the United States Sentencing Guidelines ("Guidelines" or "USSG"), pursuant to 18 U.S.C. § 3553; United States v. Booker, 533 U.S. 220 (2005); United States v. Koon, 518 U.S. 81 (1996); United States v. Gall, 552 U.S. 38 (2007); and Rita v. United States, 551 U.S. 338 (2007). Jeffrey Gossett asks the Court to sentence him to a term of Supervised Release or a combination of Home Confinement and any additional conditions the Court deems appropriate. As discussed below, such a sentence is adequate but not greater than necessary to satisfy the ends of justice and is permissible under 18 U.S.C. § 3553.

## I. INTRODUCTION

This motion is respectfully submitted in support of a variance from the advisory Guidelines set forth in the Presentence Report ("PSR"). It is also provided as a sentencing memorandum to assist the Court by providing additional information relevant to Mr. Gossett.

The Guidelines, as set forth in the PSR, provide a range of punishment of 57 months to 71 months of imprisonment, along with a fine range from twenty thousand ($20,000.00) to two hundred thousand ($200,000.00) dollars, a range of one to three years of supervised release and a

$200.00 special assessment. *See* PSR § D.107-109; 112-117; 123-126. Pursuant to 18 U.S.C. § 3553(a), and as set forth more fully below, the Court should vary downward from the advisory Guideline range because Mr. Gossett has no criminal history[1] and otherwise has proven to be a generous, hard-working, trustworthy member of his community as well as a superb husband, father, friend, mentor, and role model who exemplifies the values of integrity, generosity, and selflessness, as demonstrated in his letters of support. In addition, in acknowledging full acceptance of responsibility and remorse, Mr. Gossett has made extraordinary restitution in repaying the full restitution amount totaling $1,870,549 plus interest as set forth in the Presentence Report prior to his sentencing. Mr. Gossett is an integral part of his family and a loving father to 11 children, and he is heavily relied upon for daily support. Allowing Mr. Gossett to serve a term of supervised release will lessen the likelihood of further suffering by his family members and the detrimental impact it will have on his wife, large family, and community should he not be present to help with their physical and emotional needs.

## II. SENTENCING LAW AND PROCEDURE

The Guidelines are now but one of seven statutory factors to weigh when formulating a sentence. *United States v. Booker*, 543 U.S. 220 (2005); 18 U.S.C. § 3553. In *Booker*, the Supreme Court held the mandatory manner in which the Guidelines required courts to impose sentencing enhancements based on facts found by the court, and by a preponderance of the evidence, was a violation of the Sixth Amendment to the Constitution. The Supreme Court severed two statutory provisions, 18 U.S.C. § 3553(b)(1) (requiring sentencing courts to impose a sentence within the applicable Guideline range) and 18 U.S.C. § 3742(e) (setting forth appellate standards of review for sentencing issues), thereby making the Guidelines advisory.

[1] Mr. Gossett was arrested and convicted on charges of issuing fraudulent checks in his early 20s, but he has no other criminal history.

*Booker*, 543 U.S. at 243-44 (citing *Blakely v. Washington*, 542 U.S. 296, 313 (2004)). Although the Guidelines are no longer mandatory, *Booker* makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." *Booker*, 543 U.S. at 224.

In *Gall*, the Supreme Court articulated the procedure that must be followed:

> As we explained in *Rita*, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree to the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall*, 552 U.S. at 49-50 (internal citations omitted).

Following *Booker*, and by extension *Gall* and *Rita*, the Fourth Circuit has held that a district court should first determine the appropriate sentencing range under the Guidelines, making all factual findings appropriate for that determination. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Next, the court must "determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006) (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). The inquiry under § 3553(a) is broad-ranging. As the Fourth Circuit has observed, there is "essentially no limit on the number of

potential factors that may warrant . . . a variance." *United States v. Davenport*, 445 F.3d 366, 371 (4th Cir. 2006). "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable." *United States v. McClung*, 483 F.3d 273, 277 (4th Cir. 2006) (quoting *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006)). If the Court imposes a sentence outside the Guidelines range, it should explain its reasons for doing so. 18 U.S.C. § 3553(c)(2); *see also Hughes*, 401 F.3d at 546.

In sum, the Court must first establish the sentence under the Guidelines. Second, the Court must allow the parties to argue for the sentence they deem appropriate. Third, the Court must consider all of the factors set forth in 18 U.S.C. § 3553(a) and decide an appropriate sentence and adequately explain the chosen sentence.

## III. A VARIANCE IS WARRANTED UNDER 18 U.S.C. §3553

A variance is warranted under *Booker*, *Gall*, and 18 U.S.C. § 3553. Title 18, U.S.C. § 3553 provides:

> (a) **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
> (5) any pertinent policy statement--
>
> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a). These factors are analyzed and applied to this case as follows.

### A. <u>Nature and Circumstances of the Offense</u>

Under the first factor of Section 3553(a), the Court should consider the nature and circumstances of the offense. Mr. Gossett operates two businesses, including Select Dining, a restaurant located in Greer, South Carolina, and Simply Everything, LLC, a company involved in various real estate and other business activities which are separate from Select Dining. The charges brought against Mr. Gossett—for which he has pleaded guilty and accepts full responsibility—are based on his submission of inaccurate representations on Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDL") loan applications in order to receive PPP and EIDL loan funds on behalf of his active business entities, inactive

business entities which had previously been registered to him, entities with which he was not affiliated, and an entity owned by his close friend. Mr. Gossett also used some of the funds for purposes not stipulated under the Small Business Administration rules. While he recognizes his thought process was improper, Mr. Gossett viewed the financial assistance as loans which he had every intention of paying back to the lenders.

In total, Mr. Gossett received loan funds totaling $1,870,549 in EIDL and PPP funds. As evidence of his remorse and a demonstration of his character, Mr. Gossett has repaid the extraordinary restitution amount in full, as well as additional interest, prior to his sentencing date.

Although his actions represent serious errors in judgment and violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1957, these acts were non-violent and were limited in their consequences, and as discussed below, are not representative of Mr. Gossett's true character. Thus, the nature and circumstances of the offense weigh in favor of a variance downward from the advisory Guideline range.

### B. History and Characteristics of the Defendant

Under the first factor of Section 3553(a), the Court should also consider the history and characteristics of the Defendant.

Mr. Gossett's word means everything to him.[2] He acknowledges fully that giving into his fear of how he would satisfy innumerable financial obligations related to his restaurant businesses led him to make a decision that was wrong and belied his faith. *Id.* Mr. Gossett feared the consequences of failing to fulfill the debt payments and contracts he entered into prior to the start of the Covid-19 pandemic, and it led him to believe he could use PPP loans as a way to protect his family, employees, and businesses that are his life's work. *Id.* Regardless, Mr.

[2] *See* Exhibit A, Jeffrey Gossett Background Letter to Judge Cain.

Gossett always intended to repay all of the PPP loans and did so prior to his sentencing. Moreover, as a further demonstration of his remorse in this matter, Mr. Gossett is also in the process of repaying the legitimate PPP loan in the amount of $117,000 he received through accurate submissions to the SBA, as well as the processing fees and interest associated with that loan. *Id.* Mr. Gossett has done everything in his power to make the situation "right" and explains his deep regret that his word is diminished in the sight of his children, family, and friends. *Id.*

The numerous letters of support submitted to the Court on behalf of Jeffrey Gossett describe a partner, father, friend, and colleague, who, aside from this offense, has led a lawful and hard-working life with an emphasis on his deep faith and helping others through his work. Remarkably, Mr. Gossett's letters also demonstrate his candidness in sharing his wrongful actions and his remorse, as well as the support of his family members and friends in helping him rectify the situation. These letters outline Mr. Gossett's importance to his family and community.

Elizabeth Gossett, Mr. Gossett's wife of almost 29 years, speaks to his character as a father, role model, and support system for her and their 11 children ages 28 to six, eight of whom still live with them at home. *Exhibit B*, Letter from Elizabeth Gossett. She explains Jeff Gossett's deep faith and how his need to ensure that their family business and their family would survive the unknowns of the Covid-19 pandemic led to his situation. *Id.* She also explains that she has known Jeffrey since he was 15 years old and knew he had every intention of repaying all of the loan money he received. *Id.* Mrs. Gossett also explains that her stepfather is dying of cancer, and she needs Jeffrey's support in assisting her grieving mother and herself in navigating this loss. *Id.*

Mr. Gossett's sister, Janelle Nixon, also writes of Jeffrey Gossett's focus on what is best for his family and the way he raises his children to be hard working, respectful, and God honoring. *Exhibit C*, Letter from Janelle Nixon. Jeffrey's sister also describes his generosity and his willingness to help employees who are struggling financially or have hard times, and more importantly, that he challenges them to better themselves. *Id.* Like Jeffrey's wife, Ms. Nixon also explains that she believes Jeffrey had every intention of paying back all of the money he received within the terms of the loans, as she has found him to be trustworthy all of his life. *Id.*

Similarly, Jeffrey Gossett's friends write of his strength of character and his role as someone they regularly rely upon for emotional and familial support. Deborah Kelly Green, a family friend of 20 years, describes Jeffrey Gossett's kindness and support for her family after losing her husband. She writes, "I think if it had not been for Jeff, we would possibly be homeless…He said that he and my husband always said if anything happened to either of them, the other would step in and take care of the family. Jeff has absolutely done that". *Exhibit D*, Letter from Kelly Green. She also explains that Jeffrey Gossett is a source of moral support for her children and someone they can go to for advice and guidance after losing their father. *Id.* Similarly, Tina Dodd, a friend for over ten years, writes of Mr. Gossett's willingness to lend a hand to someone in need or to lend words of encouragement or mentorship to other entrepreneurs. *Exhibit E*, Letter from Tina Dodd. Ms. Dodd also explains, "Mr. Gossett has expressed a deep sense of remorse in making such a serious mistake and I believe in his ability to repay his debt back to his community, his friends and his family….I believe Mr. Gossett to be a loyal, trustworthy, honorable individual, a loved member of the community and a friend of mine who deserves a second chance." *Id.*

Mr. Gossett's business associates and employees also describe his integrity and trustworthiness. Mr. Robert Nations describes Mr. Gossett's "good heart" and his honest and honorable character. *Exhibit F*, Letter from Robert B. Nations. Mr. Nations explains that he does advertising work for one of Mr. Gossett's restaurants, and how he has witnessed over many hours the way Jeffrey Gossett cares about the wellbeing of his staff and customers. *Id.* He also notes that Mr. Gossett supplied Greer Community Outreach with meals every week during the pandemic without asking for any recognition. *Id.* In addition, Mr. George Stathakis, a business associate of Mr. Gossett's as well as a businessman in Greenville and Anderson for 45 years, states "I have found Jeff an honest man who does what he says. I say this because I have financed a business to him as well as a home. Jeff never missed a payment and paid off these loans on time." *Exhibit G*, Letter from George Stathakis. Further, Andrea Gonzales, Mr. Gossett's employee and colleague describes him as follows:

> I met [Jeff Gossett] in the middle of my life being completely turned upside down….Jeff gave me employment as a manager in his restaurant SELECT and a path to better my life and the lives of my children….Jeff [has] proven time and time again to be a man of his word no matter the cost of his time or his plans…He is a person that I have come to know as honorable and dependable.

*Exhibit H*, Letter from Andrea Gonzales.

Finally, Robin Johnson, Mr. Gossett's accountant and friend, describes Jeffrey Gossett's character as a family man, his faith, and his willingness to take care of others. *Exhibit I*, Letter from Robin Johnson. She states:

> I have seen Jeff give freely to others. When his best friend needed a home, Jeff borrowed the money and bought him a home. Then the friend died and Jeff is still taking care of his widow. One of Jeff's employees needed a down payment on a home. Jeff simply gave them a bonus and it was enough to do the down payment….Jeff's heart is kind. There is no malice or evil intent in him."

These letters show that Mr. Gossett's history and characteristics weigh strongly in favor of a variance sentence that allows him to continue serving as an integral member of his family and community as soon as possible.

### C. **A Variance Sentence Recognizes the Extraordinary Restitution Paid by the Defendant.**

The factor in Section 3553(a)(7) recognizes the need to provide restitution to any victims of the case. As Mr. Gossett explained repeatedly during the investigation, he never meant to steal money from the federal government and intended to pay back the financial assistance he received to the lenders within the terms of the loans. Accordingly, and in line with his character as described by his family, friends, and colleagues, Mr. Gossett has made extraordinary restitution in repaying the full restitution amount totaling $1,870,549 as set forth in the Presentence Report plus interest prior to his sentencing.

Courts have recognized that extraordinary restitution is a valid basis for a downward departure from a defendant's sentencing guideline range. *See, e.g., United States v. Hairston*, 96 F.3d 102, 108 (4th Cir. 1996) (holding that "restitution, although taken into account in the guideline permitting a reduction for acceptance of responsibility, can provide a basis for departure when present to such an exceptional degree that it cannot be characterized as typical or 'usual'" (citation omitted); *see also United States v. Kim*, 364 F.3d 1235, 1238 (11th Cir. 2004) ("we hold extraordinary restitution, whether paid before or after adjudication of guilt, may, in the unusual case, support a departure from the Guidelines so we affirm the downward departure.").

Mr. Gossett has shown full acceptance of responsibility and remorse for his actions through his voluntary payment of extraordinary restitution to the financial victims in this case prior to his sentencing.

### D. A Variance Sentence Will Adequately Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public.

The factors in Section 3553(a)(2)(A)-(D) address several traditional sentencing considerations. In this case, there is no need to protect the public from further criminal conduct of Mr. Gossett because he has long been a law-abiding and upstanding citizen with the exception of these offenses, and, as the PSR indicates, he has demonstrated acceptance of responsibility. Further, his family members, business colleagues, and friends have stressed that Mr. Gossett has their full support in rectifying this situation and moving forward. In short, a variance sentence is adequate to serve these goals of sentencing.

### E. Alternatives to imprisonment are available and appropriate here.

The third factor in Section 3553(a)—the kinds of sentences available—encourages the Court to consider the various sentencing options available to it. With a variance, the Court may craft a reasonable sentence including supervised release, community service, or home or community confinement as the Court deems appropriate based on the circumstances and mitigating factors described herein. A sentence of a Supervised Release would allow Mr. Gossett to continue to support himself and his family members through gainful employment. A sentence of Supervised Release would also allow Mr. Gossett to assist his wife and 11 children, as well as the widow and children of his dear friend, with whom he is very close, by providing emotional and practical support in their own endeavors and hardships.

### F. The Advisory Guidelines as Calculated in the PSR Overstate the Seriousness of the Offense and a Variance is Appropriate.

The fourth factor in Section 3553(a) requires the Court to consider the Guidelines. In this case, the Guidelines, as set forth in the PSR, provide a range of punishment of 57 months to 71 months of imprisonment, along with a fine range from twenty thousand ($20,000.00) to two

hundred thousand ($200,000.00) dollars, a range of one to three years of supervised release and a $200.00 special assessment. *See* PSR § D.107-109; 112-117; 123-126. However, as explained above, the Court may not presume the Advisory Guideline range to be reasonable, but rather must make an individualized assessment based on the facts of the case. Gall, 552 U.S. at 49-50. As explained above, the Advisory Guidelines fail to recognize the true nature of Mr. Gossett's offense, or the mitigating factors discussed herein.

The following information is submitted as an explanation and is certainly not in any way intended to be a justification. While the Defendant accepts full responsibility for his actions, he did not submit the loan applications at issue in intending to engage in illegal conduct or defraud anyone. Instead, Mr. Gossett always had every intention of fully repaying all of the loans he was awarded on behalf of his current and past businesses and that of his friend, and in fact voluntarily repaid all of the extraordinary restitution as set forth in the Presentence Report, which totaled $1,870,549.

Although Mr. Gossett acknowledges his improper submission of applications and documentation to the SBA, his work ethic and compassion resulted in many jobs and support for the members of his community prior to and throughout the pandemic. As detailed in numerous letters of recommendation, Mr. Gossett strives to better the lives of his employees and enable them to support their families.

## IV. CONCLUSION

For all of the foregoing reasons, Mr. Gossett respectfully requests that the Court sentence him to a term of Supervised Release or a combination of Home Confinement and any additional conditions the Court deems appropriate in this case.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

By: *s/E. Bart Daniel*
E. Bart Daniel
Federal Bar No. 403
E-Mail: bart.daniel@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
(843) 853-5200

*Counsel for Defendant Jeffrey Gossett*

Charleston, South Carolina

July 6, 2022